**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JESSICA JUSELIS,

      Plaintiff,

      v.

ARLINGTON MANAGEMENT
EMPLOYEES LLC, *et al.*,

      Defendant.

Civil Action No. 23-349 (CKK)

**MEMORANDUM OPINION**
(March 5, 2026)

Plaintiff Jessica Juselis brings this employment discrimination suit against her former employer, Arlington Management Employees LLC, and its managing partner, Peter Manos (the "Defendants"). Defendants move to dismiss the action for lack of personal jurisdiction. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court concludes that it lacks personal jurisdiction over Defendants and that Juselis is not entitled to jurisdictional discovery. However, rather than dismiss Juselis's action, the Court determines that it is in the interest of justice to transfer the matter to the District of Maryland pursuant to 28 U.S.C. § 1631, where there would be personal jurisdiction.

Accordingly, the Court shall **GRANT IN PART** Defendants' [7] Motion to Dismiss for Lack of Jurisdiction and **TRANSFER** this matter to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1631.

---

[1] The Court's consideration has focused on the following filings and their associated attachments: Plaintiff's Complaint ("Compl."), Dkt. No. 1; Defendants' Motion to Dismiss for Lack of Jurisdiction ("Defs.' Mot."), Dkt. No. 7; Defendants' Memorandum in Support of their Motion to Dismiss ("Defs.' Mem."), Dkt. No. 7-1; Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), Dkt. No. 9; Defendants' Reply in Support of their Motion to Dismiss ("Defs.' Reply"), Dkt. No. 11; Plaintiff's Notice of Supplemental Authority ("Pl.'s Notice"), Dkt. No. 12; Defendants' Response to Plaintiff's Notice of Supplemental Authority ("Defs.' Response"), Dkt. No. 13.

1

## I. BACKGROUND[2]

Defendant Arlington Management Employees LLC ("Arlington") is an investment company incorporated in Delaware and headquartered in Chevy Chase, Maryland.  Compl. ¶ 1; Defs.' Mot. ¶ 2.  Defendant Peter Manos is Arlington's Managing Partner.  Compl. ¶ 8.

Arlington employed Plaintiff Jessica Juselis as an executive assistant in the spring of 2017. Compl. ¶ 10; Defs.' Mem., at 1.  At the time, Juselis was a resident of the District of Columbia and worked in Arlington's Chevy Chase, Maryland, office.  Compl. ¶¶ 6, 10.  Juselis's role with Arlington involved providing administrative support to Defendant Manos, who assigned Juselis tasks, provided Juselis with feedback, and had the authority to hire and fire employees in Juselis's position.  *Id.* ¶ 8.  Manos, then a resident of the District of Columbia, frequently worked out of his home office, which Arlington helped furnish and support.  Juselis Decl. ¶ 2.  Juselis also worked from her home in the District on occasion.  *Id.* ¶ 8.

In March 2020, the COVID-19 pandemic caused Arlington to shift its employees to remote work.  *Id.* ¶ 3.  Juselis therefore began working from her home in the District of Columbia full-time.  Compl. ¶ 10.  Arlington provided Juselis with equipment, including a computer, to use while working from home and installed a landline phone in Juselis's home for Juselis to use for Arlington business.  Juselis Decl. ¶ 16.  Defendant Manos began the pandemic working from his residence in the District of Columbia.  *Id.* ¶ 3.  In October 2020, however, Manos moved from his property in the District and established residency in Maryland.  Manos Supp. Decl. ¶ 4.  Manos "occasionally visited" his property in the District before he sold it in May 2022.  *Id.* ¶¶ 5–6.

---

[2] The Court focuses this discussion on the background that is relevant to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.  In doing so, the Court accepts as true the well-pleaded factual allegations in Plaintiff's Complaint and her Opposition to Defendants' Motion to Dismiss.

On September 20, 2020, Juselis broke her back in an accident.  Compl. ¶ 13.  She underwent invasive surgery and spent ten days in the hospital.  *Id*.  On October 5, 2020, Juselis resumed remote work at Arlington.  *Id*.  But she had a limited range of movement and continued to experience pain from the injury and subsequent surgery.  *Id*.  Accordingly, in November 2020, Juselis notified Arlington that she was experiencing pain while working and requested that Arlington provide her with an ergonomic chair for her back.  *Id*. ¶ 14.  Arlington denied Juselis's request in January 2021.  *Id*.  Representatives from Arlington explained to Juselis that they did not think the ergonomic chair was "an Arlington expense" and informed Juselis that she exhibited "bad judgment" in submitting her request.  *Id*.

In January 2021, Arlington reopened its Chevy Chase, Maryland, office and invited employees to return to in-person work.  Juselis Decl. ¶ 9.  Arlington, however, did not require its employees to return to in-person work.  *Id*.  Instead, Arlington allowed employees to come back into the office, work remotely, or maintain a hybrid work schedule.  *Id*.  With Arlington's approval, Juselis continued to work remotely.  *Id*.

Arlington terminated Juselis on February 8, 2021.  Compl. ¶ 15.  Juselis was not given advanced notice of her termination and had not received any negative feedback during 2020 or 2021.  *Id*.  Arlington, however, felt that Juselis had been "checked out" for the past six months, which would cover the period from approximately August 2020 (a month before Juselis broke her back) to January 2021.  *Id*.  Arlington also felt that Juselis "had not shown signs of growth year-after-year" and had engaged in unprofessional conduct.  *Id*.  To support its claim that Juselis had been unprofessional, Arlington cited Juselis's request for an ergonomic chair.  *Id*.

* * *

Plaintiff Juselis brings claims of disability discrimination, retaliation, sex discrimination, and failure to pay wages due against Defendants Arlington and Manos. *See* Compl. Defendants move to dismiss Juselis's action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *See* Defs.' Mot. Juselis opposes Defendants' motion, arguing that the Court has personal jurisdiction over both Defendants and, in the alternative should the Court conclude otherwise, that the proper remedy is to transfer this matter to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1631. *See* Pl.'s Opp'n.

## II. LEGAL STANDARD

### A. Rule 12(b)(2) and Personal Jurisdiction

To overcome a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that the court has personal jurisdiction over the defendant(s). *The Urb. Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (HHK) (D.D.C. 2010). A plaintiff need not "adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather, she may rest her arguments on the pleadings, 'bolstered by such affidavits and other written materials as [she] can otherwise obtain.'" *Id*. (quoting *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)). Factual disputes should be resolved in the plaintiff's favor. *Id*. (citing *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)). But conclusory statements alone are insufficient—a plaintiff must allege "specific acts connecting the defendant with the forum." *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (cleaned up).

Federal courts "ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). But any state law governing personal jurisdiction must comport with the limitations of the Fourteenth Amendment, which require that a defendant have "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of

4

government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316–317 (1945)).  There are "two types" of personal jurisdiction that satisfy this standard: "general" (sometimes called "all-purpose") jurisdiction and "specific" (sometimes called "case-linked") jurisdiction.  *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

General jurisdiction lies in the forum where the defendant is domiciled or "fairly regarded as at home."[3]  *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12 (2025) (quoting *Bristol-Myers Squibb*, 582 U.S. at 262).  A court that has general jurisdiction over a defendant "may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Ibid*. (emphasis in original).  A corporation is "at home" in a forum where its "continuous and systematic" operations are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."  *Daimler*, 571 U.S. at 137 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 735 (2011); *Int'l Shoe Co.*, 326 U.S. at 318).  The paradigm forums in which a corporation is fairly regarded as at home are the corporation's (i) place of incorporation and (ii) principal place of business.  *Daimler*, 571 U.S. at 137.  District of Columbia law mirrors these constitutional requirements for exercising general jurisdiction.  *See* D.C. Code § 13-422 (courts in the District "may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief").

---

[3] Courts will look to a defendant's "home" at the time the action is filed.  *See TIG Ins. Co. v. Republic of Argentina*, 967 F.3d 778, 783 (D.C. Cir. 2020) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)) (explaining that "district courts determine how to rule on a motion to dismiss by 'looking to the facts existing when' the complaint is filed").

Specific jurisdiction, on the other hand, "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 592 U.S. at 359. A court may exercise specific jurisdiction over a defendant "only so long as there exist 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *International Shoe*, 326 U.S. at 316). To have the requisite "minimum contacts" with the forum State, a defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" *Ford Motor Co.*, 592 U.S. at 359 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). These contacts must be of "the defendant's own choice and not random, isolated, or fortuitous," and they must show that the defendant "deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id*. (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Walden v. Fiore*, 571 U.S. 277, 285 (2014)) (internal quotation marks and alterations omitted).

Even if a court determines that a defendant has sufficient contacts with the forum State, it may exercise specific jurisdiction over the defendant only if the claims against the defendant "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co.*, 592 U.S. at 359 (internal citations omitted). Accordingly, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tires*, 564 U.S. at 919). "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Ibid*. (internal quotation marks omitted).

The District of Columbia's long-arm statute permits courts to exercise personal jurisdiction over a person as to a claim for relief "arising from" the person's "transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). It also permits courts to exercise personal jurisdiction over a person that causes tortious injury in the District by an act done outside the District if the person "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District." *Id*. § 13-423(a)(4). These provisions are "coextensive" with the constitutional requirements for specific jurisdiction. *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723, 727 (D.C. 2011); *see also Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004).

### B. Jurisdictional Discovery

If a party "demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). A plaintiff seeking jurisdictional discovery "must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Such a request for jurisdictional discovery "cannot be based on mere conjecture or speculation." *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1093–94 (D.C. Cir. 2008), *overruled on other grounds by Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir. 2021) (citing *Bastin v. Fed. Nat'l Mortgage Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997)).

### C. Transfer under 28 U.S.C. § 1631

If a court determines that it lacks jurisdiction over a civil action, then it "shall, if it is in the interest of justice, transfer such action" to any other court "in which the action [] could have been brought at the time it was filed." 28 U.S.C. § 1631. "There are three elements to a section 1631 transfer: (1) there must be a lack of jurisdiction in the district court; (2) the transfer must be in the

7

interest of justice; and (3) the transfer can be made only to a court in which the action could have been brought at the time it was filed or noticed." *Fasolyak v. The Cradle Soc'y, Inc.*, No. 06-cv-1126 (TFH), 2007 WL 2071644, at *11 (D.D.C. July 19, 2007) (quoting *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 549 (D.C. Cir. 1992)).  As the party requesting transfer, Plaintiff bears the burden of establishing that the elements of a Section 1631 transfer have been met.  *See Osage Tribe of Indians of Okla. v. United States*, No. 04-cv-283, 2005 WL 578171, at *2 (D.D.C. Mar. 9, 2005).

### III. ANALYSIS

#### A.  The Court does not have personal jurisdiction over the Defendants.

The Court does not have personal jurisdiction over Defendant Manos and Defendant Arlington.  At the outset, neither Defendant is subject to the Court's general jurisdiction because neither Defendant is "at home" in the District of Columbia.  *Daimler*, 571 U.S. at 137.  Defendant Manos is not "at home" in the District because he was domiciled in Maryland at the time this action was commenced.  Manos Decl. ¶ 11.  Defendant Arlington, on the other hand, is not "at home" in the District because it is incorporated in Delaware, has its principal place of business in Maryland, and does not have continuous and systematic operations in the District—let alone "substantial" operations—that would otherwise render it "at home" in the District.  Defs.' Mot., ¶ 2; *Daimler*, 571 U.S. at 137.

Juselis has not established that the Court has specific personal jurisdiction over the Defendants.  Determining whether Defendant Manos or Defendant Arlington have sufficient "minimum contacts" with the District for purposes of Fourteenth Amendment due process is useful only if Juselis's claims against Manos and Arlington "arise out of or relate to" those contacts.  *Ford Motor Co.*, 592 U.S. at 359; *Bristol-Myers Squibb Co.*, 582 U.S. at 262.  This is also the case under the District's long-arm statute: "When jurisdiction over a person is based solely upon" the

District's long-arm statute, "only a claim for relief *arising from* acts enumerated in [the statute] may be asserted against [them]." D.C. Code § 13-423 (emphasis added); *see also Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786 (D.C. Cir. 1983); *Zhu*, 2004 WL 1249788, at *2. For the following reasons, the Court concludes that it does not have specific personal jurisdiction over Defendants Manos and Arlington because Juselis's claims against the Defendants do not arise out of their contacts with the District.

Juselis brings four claims against Defendants Manos and Arlington. Compl. at 6–7. Three of these four claims—a disability discrimination claim, a retaliation claim, and a sex discrimination claim—arise out of Arlington's termination of Juselis in February 2021. *Id*. Juselis's final claim— failure to pay wages due—arises out of Arlington's alleged misclassification of Juselis's employment and failure to "maintain adequate records of her hours worked," resulting in "unpaid wages for overtime and other benefits." *Id*. ¶¶ 16, 24.

Juselis's claims do not arise out of Defendant Manos's alleged contacts with the District. Manos managed Juselis during at least part of her employment at Arlington and allegedly had the authority to hire and fire individuals in positions like Juselis's. Juselis Decl. ¶ 2; Compl. ¶ 8. Juselis argues that Manos often assigned her tasks while he was working from his then-home in the District, and that he also "routinely conducted business development activity and attended business-related meetings" in the District. Juselis Decl. ¶¶ 2, 8; Compl. ¶ 8. But Juselis does not argue that Manos was involved in Arlington's decision to terminate her, even though he allegedly had the authority to make that decision, nor does she argue that Manos had any involvement in Arlington's payroll. *See* Compl. ¶ 8 (stating that Manos "never suggested that Plaintiff's job was in danger prior to her termination."). Even if Juselis did claim that Manos made the decision to terminate her employment, this decision would not have related to his contacts with the District.

9

Juselis's termination did not arise out of Manos's alleged "business development" and "business-related meetings" in the District, and at the time of Juselis's termination, Manos was no longer a resident of the District, but a resident of Maryland. Manos Supp. Decl. ¶ 4. Accordingly, whatever the status of Manos's contacts with the District, those contacts are insufficient for Juselis to establish specific jurisdiction over Manos because they do not relate to Juselis's underlying claims.

Similarly, Juselis's claims against Defendant Arlington also do not arise out of Arlington's alleged contacts with the District. Juselis's primary argument is that Arlington personally availed itself of the District by allowing her to work remotely from her home in the District. Arlington employed Juselis to work in its Chevy Chase, Mayland, headquarters. *See* Compl. ¶ 10; Defs.' Mem., at 1–2. Then a global pandemic happened, so Arlington, like most businesses after the President's declaration of a national emergency, temporarily closed its Chevy Chase office and began operating with its employees working remotely from their homes. Defs.' Mem., at 9. As a result, Juselis began working for Arlington from her home in the District of Columbia, where she worked until her termination in February 2021. But Arlington's decision to close its Chevy Chase office and have at least one of its employees—Juselis—work from their home in the District was not a decision by which Arlington "purposefully avail[ed] itself of the privilege of conducting activities within" the District. *Ford Motor Co.*, 592 U.S. at 359 (quoting *Hanson*, 357 U.S. at 253). This decision was not of Arlington's "own choice;" it was in response to a "random, isolated, [and] fortuitous" event. *Id*. Accordingly, Arlington's decision to have its employees work from home during the COVID pandemic is insufficient standing alone to establish the requisite contact with the District.

Juselis raises a handful of other contacts between Arlington and the District, but these contacts are insufficient to establish specific jurisdiction over Arlington because they do not relate

to Juselis's claims.  For example, Juselis argues that Arlington "holds itself out to the world as a 'Washington-D.C. based' private equity firm."  Pls.' Opp'n, at 10.  As a factual matter, Juselis appears to be correct: she has provided evidence showing that, through its website, LinkedIn page, Wikipedia page, and press releases, Arlington has, at various times, advertised itself as a firm "based" and/or "headquartered" in the District that can "leverage its Washington, D.C. network and contacts" to help its clients.  *Id*. at 10–13.  But as a legal matter, these contacts do not relate to Juselis's claims of discriminatory termination nor her claim of unpaid wages.  *Bristol-Myers Squibb Co.*, 582 U.S. at 262.  Juselis also argues that Arlington's business exploits the District's market.  Pls.' Opp'n, at 13–14.  Again, as a factual matter, Juselis may be correct: Arlington "works with law firms and with investment banks in" the District, holds a variety of business lunches and dinners in the District, and even holds annual meetings in the District.  Juselis Decl. ¶ 11–14.  But these contacts do not relate to Juselis's claims, either.  *Bristol-Myers Squibb Co.*, 582 U.S. at 262.  Nor are they "so substantial" as to render Arlington "at home" in the District.  *Daimler*, 571 U.S. at 137.  Accordingly, the Court lacks personal jurisdiction over Arlington.

\* \* \*

Neither Defendant Manos nor Defendant Arlington is "at home" in the District.  They are therefore subject to the Court's jurisdiction only if they have sufficient relevant contacts with the District.  The Court determines that they do not have those contacts.  Manos and Arlington did not purposefully avail themselves of the District in a way that is relevant to Juselis's claims.  Accordingly, the Court does not have personal jurisdiction over them.

## B.  Juselis is not entitled to jurisdictional discovery.

Although this Circuit's standard for permitting jurisdictional discovery is "quite liberal," *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F.Supp.2d 1, 15 (D.D.C. 2003), the Court determines that jurisdictional discovery is not warranted here because Juselis has not shown "a

good faith belief that such discovery will enable [her] to show that the court has personal jurisdiction," *Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998).

Juselis seeks discovery into Arlington's "courses of business dealings in the District" and "the ways it has availed itself of contacts in D.C. to advance its business and investments" to "demonstrate that [Arlington] had more contact and business dealings within District of Columbia [sic] than it currently acknowledges." Pl.'s Opp'n, at 19–20. But even if Juselis's proposed discovery revealed that Arlington had more contacts with the District than it currently admits, it would still be insufficient to establish personal jurisdiction over Arlington because Juselis's claims do not "arise out of or relate to" those contacts. *Ford Motor Co.*, 592 U.S. at 359 (internal citations omitted). Juselis's claims arise out of Arlington's allegedly discriminatory termination and its alleged mismanaging of Juselis's status on its payroll, not Arlington's business development and internal meetings in the District. *See* Pl.'s Opp'n, at 19–20 (where Juselis explains that she would seek discovery of materials like the "minutes, recordings and records of meetings" conducting by Arlington in the District and "expense reports reflecting reimbursement to employees for business development" in the District). Furthermore, any discovery into how Arlington supported its employees that worked in the District during the COVID pandemic would be insufficient to establish personal jurisdiction over Arlington because, as explained above, Arlington did not purposefully avail itself of the District by allowing its employees to work remote from the District during the pandemic.

Accordingly, because Juselis's proposed discovery would not enable her to establish personal jurisdiction, the Court concludes that jurisdictional discovery is not warranted in this case.

**C. The Court finds that it is in the interests of justice to transfer this action to the District of Maryland pursuant to 28 U.S.C. § 1631.**

Juselis argues that the Court should transfer this action to the District of Maryland in the event it lacks jurisdiction over Defendants. Pl.'s Opp'n, at 20–24. Federal law provides that if a court determines it lacks jurisdiction, then it "shall, if it is in the interest of justice, transfer such action" to any other court "in which the action [] could have been brought at the time it was filed." 28 U.S.C. § 1631. This breaks down into three elements that Juselis bears the burden of establishing: (1) the Court must lack jurisdiction; (2) the transfer must be in the interest of justice; and (3) Juselis must have been able to bring this action in the District of Maryland at the time it was filed or noticed. *See Fasolyak*, No. 06-cv-1126 (TFH), 2007 WL 2071644, at *11.

The Court concludes that Juselis has met all three requirements for her requested transfer under 28 U.S.C. § 1631. *First*, the Court has already determined that it lacks jurisdiction over Defendants. *Second*, Juselis could have brought this action in the District of Maryland because, at the time of filing, both Defendant Manos and Defendant Arlington were "at home" in Maryland. *See* Manos Decl. ¶ 11 (explaining Manos was domiciled in Maryland at time Juselis filed action); Defs.' Mot., ¶ 2 (explaining that Arlington was headquartered in Maryland at time Juselis filed action).

*Finally*, the Court determines that transferring this action to the District of Maryland would be in the interest of justice. Such transfer would be in the interest of justice because, as explained above, it would "make an adjudication on the merits of plaintiff's claims possible." *Sinclair v. Kleindienst*, 711 F.2d 291, 294 (D.C. Cir. 1983). Furthermore, a "[t]ransfer is particularly appropriate where, as here, without a transfer the cause of action would be barred by the running of the applicable statute of limitations." *Ibid*. If the Court were to dismiss Juselis's action, then she would likely face statute of limitations issues in the future because, as Juselis explains, she

13

filed this action shortly before "the 2-year limitations period under Maryland law for her pendant state claim." Pl.'s Opp'n, at 22–3. Finally, a transfer would be in the interest of justice because it "would save the parties the time and expense associated with refiling" without prejudicing the Defendants. *Freedman v. Suntrust Banks, Inc.*, 139 F. Supp. 3d 271, 285 (D.D.C. 2015) (CKK). Indeed, Defendants do not appear to oppose Juselis's requested transfer. *See Bethea v. Holder*, 82 F. Supp. 3d 362, 367 (D.D.C. 2015) (CKK).

## IV. CONCLUSION

The Court lacks personal jurisdiction over Defendants Manos and Arlington because they are not at home in the District of Columbia and do not have sufficient contacts with the District relevant to Plaintiff Juselis's claims. Juselis is not entitled to jurisdictional discovery because her proposed discovery is directed towards Defendants' general contacts with the District rather than Defendants' contacts with the District relevant to Juselis's claims. Rather than dismiss Juselis's action, however, the Court concludes that it is in the interest of justice to transfer the action to the District of Maryland, where both Manos and Arlington are domiciled for purposes of personal jurisdiction.

For the foregoing reasons, the Court shall **GRANT IN PART** Defendants' [7] Motion to Dismiss for Lack of Jurisdiction and **TRANSFER** this action to the District of Maryland pursuant to 28 U.S.C. § 1631.

**Dated:** March 5, 2026

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

14